**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Sweet, | No. CV-19-05312-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| John R. Tomlinson, *et al.*, | |
| Defendants. | |

At issue is Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) (Doc. 22, "Mot."), to which Plaintiff filed a Response (Doc. 30, "Resp.") and Defendants filed a Reply (Doc. 34). For the following reasons, the Court grants in part Defendants' Motion and conditionally dismisses Plaintiff's claims for breach of contract, breach of the duty of good faith and fair dealing, and breach of fiduciary duties.

**I.     BACKGROUND**

The Court, to the best of its ability, summarizes the facts alleged in Plaintiff's First Amended Complaint (Doc. 20, "FAC") as follows. Defendant John Tomlinson ("Defendant") was and still is the sole manager of a nonparty limited liability company called AVI Mail Internet Solutions, LLC ("AVI"). (FAC ¶¶ 5, 14.) He is also a trustee of Defendant Tomlinson Family Trust ("Trust"), as is his wife, Defendant Mary Tomlinson. (FAC ¶ 4.)

AVI was formed in October 2002. Its articles of organization filed with the Arizona Corporation Commission list nonparty entities Fortune Media & Marketing, LLC

("FMM") and TechFX, Inc. as AVI's sole members, each having a 50% membership interest in AVI. (FAC ¶¶ 12, 15.) To date, there have been no documents filed with the ACC amending the information contained in the initial articles. (FAC ¶ 16.) Plaintiff alleges FMM, TechFX, and AVI entered into a written operating agreement ("Operating Agreement") on December 2, 2002, the terms and conditions of which "were to govern the relationships and rights of its members by and among themselves as well as in relation to [AVI] itself." (FAC ¶ 17.)

Plaintiff entered into the picture in May 2004, when he paid $100,000 to AVI and $5,000 to nonparty Capital Consortium, Inc. on behalf of AVI. These sums were "intended to be short term loans and/or purportedly in exchange for a 5% membership interest in AVI." (FAC ¶¶ 18–20.) He does not allege the existence of a promissory note or anything memorializing the terms of his alleged loan or membership interest in AVI. Plaintiff also "gifted" 1% of his purported 5% membership interest in AVI to Capital Consortium, which resulted in forgiveness by Capital Consortium of a $36,000 debt owed by AVI. (FAC ¶ 21.) All told, Plaintiff alleges he conferred a benefit of $141,000 upon AVI. (FAC ¶ 22.)

Over the course of the next nine years, until September 2013, Defendant repeatedly assured Plaintiff that either AVI or he personally would repay Plaintiff; that Plaintiff would receive a large return on his investment; and that Defendant was "personally using his best efforts to maximize the return on [Plaintiff's] investment and/or generate revenues sufficient for the repayment of the loan." (FAC ¶ 23.) Defendant allegedly told at least one other person on multiple occasions that Defendant and/or AVI had an obligation to Plaintiff. (FAC ¶¶ 31–34, 41, 44.)

On April 13, 2010, Defendant caused AVI to acquire 1,000 shares of a nonparty business entity called Selmor on Demand, Inc. ("SOD"). (FAC ¶ 24.) Defendant became a director and the CEO of SOD. In February 2013, Plaintiff told Defendant he "would need to be re-paid the loan and/or see substantial return on his membership interest in AVI." (FAC ¶ 42.) In February 2014, Plaintiff appeared at what Defendant had previously told him were the offices of AVI to ascertain the progress of his loan repayment and/or

investment. (FAC ¶ 46.) Plaintiff was advised that the offices were that of SOD, not AVI, and that Defendant was no longer a director or officer of SOD. Defendant had also allegedly abandoned AVI's books and records at the SOD offices. (FAC ¶ 49.)

Plaintiff finally gained access to the abandoned records in July 2014. (FAC ¶ 50.) Among them was a copy of an October 8, 2003 purported amendment ("Amended Operating Agreement") to the original Operating Agreement. Plaintiff admits he has never seen the Operating Agreement. (FAC ¶¶ 68, 91.) However, by reviewing the Amended Operating Agreement, Plaintiff allegedly ascertained that the original Operating Agreement required the unanimous consent of all members to release or modify a member's obligation to make a capital contribution in exchange for an interest in AVI; admit new members; amend the Operating Agreement; and authorize transactions unrelated to AVI's purpose or business. (FAC ¶¶ 66, 73, 75, 77.) Plaintiff alleges Defendant has caused AVI to take all these actions without Plaintiff's consent. Moreover, the Operating Agreement allegedly requires the consent of a majority of AVI's members to authorize the repurchase of any member's interest and to authorize the distribution of cash or property to members. (FAC ¶¶ 79, 81.) Plaintiff alleges Defendant has unilaterally caused AVI to unlawfully do both.

Finally, Plaintiff alleges Defendant continues to conceal AVI's books and records. (FAC ¶ 59.) This has prohibited Plaintiff from ascertaining the fair market value of the capital contributions of the other members of AVI and whether he is entitled to a greater percentage of membership interest in AVI. Relatedly, Defendant unilaterally and arbitrarily assigns values to the non-cash capital contributions of other members. (FAC ¶ 89.) Defendant continues to utilize the assets of AVI as if they were his own and cause AVI to waste and/or divert its assets to Defendant and his agents and affiliates.

Plaintiff, individually and in his capacity as an alleged non-managing member of AVI, filed this action against Defendant, individually and in his capacity as the sole managing member of AVI; the Trust; and Mary Tomlinson. The FAC asserts eight counts: (1) breach of contract regarding the Operating Agreement; (2) breach of the duty of good

faith and fair dealing regarding the Operating Agreement; (3) breach of contract regarding the Operating Agreement and a document called the Restructuring Agreement;[1] (4) breach of the duty of good faith and fair dealing regarding the Operating Agreement and the Restructuring Agreement; (5) breach of fiduciary duties; (6) constructive trust and accounting; (7) promissory estoppel; and (8) unjust enrichment. Counts 1, 2, 3, 4, and 8 are alleged against Defendant and the Trust. Counts 5, 6, and 7 are alleged only against Defendant. Defendants now move to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6).

## II.   LEGAL STANDARD

When analyzing a complaint for failure to state a claim for relief under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010).

A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint must thus

---

[1] Plaintiff mentioned the Restructuring Agreement, a document dated December 18, 2006, for the first time in Count 3. Defendant allegedly emailed Plaintiff a copy of the Restructuring Agreement on December 21, 2006. Plaintiff alleges that, according to the Restructuring Agreement and contemporaneous statements made by Defendant, AVI had admitted new members, acquired shares in other companies, and acknowledged various transfers of AVI membership interests to other entities. The Restructuring Agreement also purportedly revealed that Defendant had caused AVI to acknowledge and agree to be contractually obligated for $659,127 in loan indebtedness. (FAC at 22–27.)

contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### III. ANALYSIS

#### A. Discovery Rule

Defendants' sole argument for dismissal is that Plaintiff's claims are time-barred. They first contend that all claims stem from acts that occurred many years ago. For example, the Operating Agreement was allegedly executed in 2002, the Amended Operating Agreement in 2003, and the Restructuring Agreement in 2006. Plaintiff made his only payments to AVI in 2004. He became aware of the Restructuring Agreement and its terms in December 2006 when Defendant sent him a copy. Plaintiff "either did nothing to investigate the matters recited in the Restructuring Agreement, was satisfied with whatever investigation he conducted, or was dissatisfied and failed to act." (Mot. at 7.) Moreover, Defendants argue "it is patently unreasonable to invest or make an oral, 'short-term' loan in 2004, receive no repayment or return at any time, wait continually with only periodic vague or general assurances that it will be paid and that information will be provided, and take no investigative or legal action for more than ten years." (Mot. at 14.) Accordingly, Defendants argue any cognizable actions or inactions were time-barred long before this action was filed. (Mot. at 7.)

However, the Court understands the FAC to assert that, although Plaintiff may have been aware as of December 2006 of the actions Defendant caused AVI to take as enumerated in the Restructuring Agreement, Plaintiff did not know of their alleged impropriety—and therefore, his injury—until he discovered the abandoned documents in July 2014. Similarly, Plaintiff did not realize the alleged breach of the Operating Agreement until he saw the Amended Operating Agreement.

Under Arizona's discovery rule, a cause of action accrues when the plaintiff knew or by the exercise of reasonable diligence should have known of the defendant's conduct and resulting injuries. *Logerquist v. Danforth*, 932 P.2d 281, 284 (Ariz. Ct. App. 1996). Defendants argue Plaintiff's delay in investigating or detecting his injury was not reasonable and the discovery rule should not apply. (Mot. at 8.) This inquiry—as application of the discovery rule often does—turns on facts. *Logerquist*, 932 P.2d at 287; *Gust, Rosenfeld & Henderson v. Prudential Ins.*, 898 P.2d 964, 965–66 (Ariz. 1995) (holding whether the plaintiff should have discovered through reasonable diligence that the defendant breached the contract was a fact question properly submitted to the jury). Accordingly, for purposes of this Motion, the Court accepts as true that Plaintiff discovered his injuries in July 2014.

With an accrual date of July 2014, six of Plaintiff's claims are untimely. Claims for breach of the covenant of good-faith and fair dealing and breach of fiduciary duty have a two-year statute of limitations. *See* A.R.S. §12-542; *Coulter v. Grant Thornton, LLP*, 388 P.3d 834, 838 (Ariz. Ct. App. 2017); *see also Thomas v. Wells Fargo Bank, Nat. Ass'n,* 866 F. Supp. 2d 1101, 1107 (D. Ariz. 2012). Plaintiff's promissory estoppel claim has a limitations period of three years. *See* A.R.S. §12-543; *Kersten v. Cont'l Bank*, 628 P.2d 592, 596 (Ariz. Ct. App. 1981). His claims for a constructive trust and accounting and unjust enrichment have four-year limitations periods. A.R.S. §12-544, §12-550; *French v. French*, 606 P.2d 830, 832 (Ariz. Ct. App. 1980); *Rzendzian v. Marshall & Ilsley Bank*, 2014 WL 3610897, at *4 (Ariz. Ct. App. July 17, 2014). The latest Plaintiff could have brought the above claims was, respectively, July 2016, July 2017, and July 2018. Because he filed this action on October 2, 2019, they are barred. Only his breach of contract claims, which have a six-year statute of limitations, are timely. *See* A.R.S. § 12-548.

### B. Equitable Tolling

Plaintiff raises two arguments to avoid dismissal of his untimely claims. First, he contends equitable tolling should apply. Plaintiff apparently brought a nearly identical action against Defendants in state court in July 2015. (*See* Mot. Ex. 1.) Plaintiff contends

- 6 -

the parties engaged in settlement negotiations and reached an agreement on the material terms of a settlement. "Incredibly, after having obtained the Plaintiff's consent to stipulate to dismiss the State Court Action without prejudice, upon the State Court's entry of an Order doing just that the Defendants suddenly and unilaterally claimed that circumstances had changed and that there was no longer a case to be settled." (Resp. at 2.) Plaintiff argues Defendants' misconduct in and after the state court action entitles him to equitable tolling of his claims at issue there—the same ones he brings here. The Court disagrees.

First, Plaintiff never mentioned the 2015 lawsuit in the FAC. He cannot now request his claims be tolled based on nonexistent allegations. Second, and more importantly, even if he had properly alleged the above facts in the FAC, equitable tolling would not apply in these circumstances. As the name suggests, the doctrine is rooted in equity, such that plaintiffs "may sue after the statutory time period for filing a complaint has expired if they have been prevented from filing in a timely manner due to *sufficiently inequitable circumstances*." *McCloud v. State, Ariz. Dep't of Pub. Safety*, 170 P.3d 691, 696 (Ariz. Ct. App. 2007) (emphasis added). It is reserved for "extraordinary circumstances beyond plaintiffs' control [that] made it impossible to file the claims on time" and "should be used only sparingly." *Id.* at 696–697. Not only were the events leading up to the October 2018 dismissal of Plaintiff's state court action not beyond Plaintiff's control, but he *stipulated* to the dismissal of that action—apparently before actually obtaining an enforceable settlement agreement. Simply put, this is not a sufficiently inequitable or extraordinary circumstance to warrant equitable tolling of his claims.[2]

---

[2] Plaintiff also argues Defendants should be equitably estopped from asserting a statute of limitations defense because they induced Plaintiff to dismiss his 2015 state court action through promises of settlement. (Resp. at 9–10.) The Court rejects this for similar reasons. Again, Plaintiff made the decision to stipulate to dismiss his action without first securing an enforceable settlement agreement. Equity does not tip in his favor on these facts. Moreover, in the context of a statute of limitations issue, equitable estoppel can apply if the defendant, by its conduct, induces the plaintiff "to forego litigation, by leading him to reason and believe a settlement . . . will be effected without the necessity of bringing suit." *Certainteed Corp. v. United Pac. Ins. Co.*, 762 P.2d 560, 564 (Ariz. Ct. App. 1988). Plaintiff did not forego litigation based on Defendants' conduct. He brought the lawsuit, voluntarily dismissed it, and then waited almost a year to refile in federal court.

### C. Continuing Impact

Plaintiff also submits his claims are timely because the FAC alleges "transactions and events that continue to have ongoing impact upon his interest in the company and his contractual and statutory rights." (Resp. at 5.) Plaintiff alleges, upon information and belief, that Defendant continues to date to make periodic payments to himself and the Trust, amend the Operating Agreement without consent of all AVI members, make unauthorized distributions, manipulate the books, conceal documents, unilaterally authorize transactions on behalf of AVI, compromise AVI member obligations to make capital contributions, and repurchase membership interests. (FAC ¶¶ 61, 74, 76, 78, 80, 82.)

The Court is not persuaded by Plaintiff's conclusory allegations. First, allegations of ongoing conduct, such as those alleged above, would not make Plaintiff's claims for promissory estoppel, unjust enrichment, and a constructive trust timely. Those claims all relate to the sum of money Plaintiff allegedly gave AVI back in 2004. As the Court found above, the *very latest* Plaintiff would have discovered the injuries giving rise to those claims would have been July 2014. Accordingly, Counts 6, 7, and 8 are dismissed with prejudice.

Plaintiff also fails to resurrect the remaining untimely claims—breach of fiduciary duties and breach of the covenant of good faith and fair dealing—with the above allegations. By way of example, Plaintiff alleges Defendant continues to make unauthorized distributions. If Defendant had made an unauthorized distribution to himself within the two years preceding this action, Plaintiff could potentially have a claim for breach of fiduciary duty for that particular, stand-alone tortious act. He cannot tack it on to otherwise time-barred claims in attempt to revive them.[3] But, critically, Plaintiff does not allege any *facts* to support such a claim. Indeed, the underlying allegations in the FAC are

---

[3] Plaintiff does not invoke the continuing tort doctrine, but the Court will address it for the sake of thoroughness. That doctrine provides that when a tort claim is based on a series of related wrongful acts such that the tortious conduct is continuous, the cause of action accrues at the termination of the wrongdoing, rather than at the beginning. *See Cruz v. City of Tucson*, 401 P.3d 1018, 1023 (Ariz. Ct. App. 2017). Even if Plaintiff had raised this argument, the allegations in the FAC do not support it: beyond conclusory allegations, Plaintiff never alleges any tortious acts within the statute of limitations. *See id.*

nearly identical to those in his 2015 state court complaint. He merely emphasizes or adds that whatever actions that gave rise to his 2015 action continue to this date, but offers no factual support. This is insufficient to state a claim for relief. *See Iqbal*, 556 U.S. at 678. Accordingly, Counts 2, 4, and 5 are dismissed.

### D. Failure to State a Claim

Count 1 alleges a breach of contract "regarding the Operating Agreement." (FAC at 16.) Somewhat confusingly, Count 3 also asserts a breach of contract "regarding the Re-Structuring Agreement and Operating Agreement," yet later appears to allege only a violation of the Operating Agreement. (FAC ¶ 167.) The Court is skeptical that a cause of action exists for a member of an LLC to sue another member under breach of contract with respect to the LLC's operating agreement. Even presuming it is a cognizable claim, Plaintiff never alleges he was a member of AVI or a party to its Operating Agreement. In fact, he alleges the opposite: FMM and TechFX "entered into [the] written Operating Agreement" in 2002 and are—and have always been—the only members listed in the articles of organization. (FAC ¶¶ 13, 15–17.) To the extent an LLC operating agreement can serve as a contract under which a claim for breach between members can arise, Plaintiff fails to allege he is a party to it. Nor has Plaintiff alleged the existence of a promissory note or any other contract to which he and Defendant were parties. Accordingly, he fails to state a claim for breach of contract.

The covenant of good faith and fair dealing, implied in every contract, arises by virtue of a contractual relationship. *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986). Because Plaintiff has not alleged a valid contract, Counts 2 and 4 fail. Similarly, Plaintiff alleges the only members of the LLC are FMM and TechFX. As Plaintiff is not a member of AVI, Defendant does not owe him fiduciary duties. Count 5 accordingly fails. This is in addition to these claims being untimely as discussed above.

Although Defendants raised only a statute of limitations argument, the Court may dismiss a claim *sua sponte* under Rule 12(b)(6) if it gives Plaintiff "notice of its intention to dismiss" and an "opportunity to at least submit a written memorandum in opposition" to

its *sua sponte* dismissal. *Reed v. Lieurance*, 863 F.3d 1196, 1207 (9th Cir. 2017). The Court has doubts that Plaintiff can state a claim for breach of contract for the reasons just described. However, it will give Plaintiff an opportunity to present his reasoning why the Court should not dismiss the action in its entirety. Plaintiff has 14 days to clarify his position with respect to Counts 1 and 3, as well as Counts 2, 4 and 5. This includes demonstrating the Court's subject matter jurisdiction over his claims, because currently, the parties are suing and being sued in their official capacities.[4]

**IT IS THEREFORE ORDERED** granting in part Defendants' Motion to Dismiss. Counts 2, 4, 5, 6, 7, and 8 are dismissed as time-barred. Counts 6, 7, and 8 are dismissed with prejudice, as no set of facts will make them timely.

**IT IS FURTHER ORDERED** that Plaintiff submit his opposition to the Court's decision to *sua sponte* dismiss his remaining claims, Counts 1 and 3, as well as its additional grounds for dismissing Counts 2, 4, and 5. Plaintiff has 14 days to submit a memorandum explaining the basis for his claims for breach of contract, the duty of good faith and fair dealing, and/or fiduciary duties, and this Court's subject matter jurisdiction over the same. Failure to comply will result in dismissal of those claims.

Dated this 25th day of August, 2020.

Honorable John J. Tuchi
United States District Judge

---

[4] Plaintiff requested to amend the FAC in the event the Court concludes it fails to state a claim. (Resp. at 11.) *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (holding leave to amend should be granted "if it appears at all possible that the plaintiff can correct the defect" in the complaint). Here, the defects in several claims cannot be cured. However, if Plaintiff can demonstrate in his brief that he can state a claim for breach of contract, the duty of good faith and fair dealing, and/or fiduciary duties, he will have an opportunity to amend the FAC.